**Isabel Collier READ, as Executrix of the Estate of Miles Collier, Deceased, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 19517.**

United States Court of Appeals Fifth Circuit.

July 18, 1963.

Harold S. Lynton, New York City, J. A. Franklin, Fort Myers, Fla., Harold A. Axel, New York City, of counsel, for appellant.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Atty., Dept. of Justice, Washington, D. C., Edward F. Boardman, U. S. Atty., Miami, Fla., Arnold Levine, Asst. U. S. Atty., Tampa, Fla., Loring W. Post, Michael A. Mulroney and Meyer Rothwacks, Attys., Dept. of Justice, Washington, D. C., for appellee.

Before TUTTLE, Chief Judge, and JONES and GEWIN, Circuit Judges.

JONES, Circuit Judge.

Miles Collier, a resident of Collier County, Florida, died in 1954. His wife, the appellant, was named by him as his executrix and she qualified as such. Among the assets of his estate were a number of real estate mortgages, known as the Gerry mortgages. These were valued for federal estate taxes in the decedent's estate at $984,056.50. The federal estate tax attributable to these mortgages was $184,996.51. In 1955 the decedent's estate disposed of the Gerry mortgages and received the amount of $1,093,305.51, which was income. This income was treated, by the estate for income tax purposes, as a capital gain. Its right to do so is not questioned. During the year the estate realized other capital gains in the amount of $92,012.93. In the 1955 income tax return a tax of $302,213.20 was reported and tax payments of this amount were made. The estate made a claim for refund on the ground that it was entitled to the benefit of, but had not taken in its computation, a deduction under Section 691 of

the Internal Revenue Code of 1954.[1] The Internal Revenue Service determined that a refund was payable but in an amount much less than the executrix felt she was entitled to receive. To assert her claim suit was brought. The exec-utrix and the Government both filed motions for summary judgment. The motion of the Government was granted and the complaint dismissed. From the judgment against her the executrix has appealed.

|  |  |  |
|---|---|---|
| The Government would impose a tax of 25% on the capital gains of $1,185,318.44 in the amount of | | $296,329.61 |
| against which it would apply a dividend credit of | $755.14 | |
| and a foreign tax credit of | 78.06 | |
| or a total credit of | | 833.20 |
| leaving a balance of | | $295,496.41. |

———◆———

1. (26 U.S.C.1958 ed., § 691.)

"§ 691. Recipients of income in respect of Decedents

"(a) Inclusion in gross income.—

"(1) General rule.—The amount of all items of gross income in respect of a decedent which are not properly includible in respect of the taxable period in which falls the date of his death or a prior period (including the amount of all items of gross income in respect of a prior decedent, if the right to receive such amount was acquired by reason of the death of the prior decedent or by bequest, devise, or inheritance from the prior decedent) shall be included in the gross income, for the taxable year when received, of:

"(A) the estate of the decedent, if the right to receive the amount is acquired by the decedent's estate from the decedent;

> \*　\*　\*　\*　\*

"(c) Deduction for estate tax.—

"(1) Allowance of deduction.—

"(A) General rule.—A person who includes an amount in gross income under subsection (a) shall be allowed, for the same taxable year, as a deduction an amount which bears the same ratio to the estate tax attributable to the net value for estate tax purposes of all the items described in subsection (a) (1) as the value for estate tax purposes of the items of gross income or portions thereof in respect of which such person included the amount in gross income (or the amount included in gross income, whichever is lower) bears to the value for estate tax purposes of all the items described in subsection (a) (1).

"(B) Estates and trusts.—In the case of an estate or trust, the amount allowed as a deduction under subparagraph (A) shall be computed by excluding from the gross income of the estate or trust the portion (if any) of the items described in subsection (a) (1) which is properly paid, credited, or to be distributed to the beneficiaries during the taxable year. This subparagraph shall apply to the same taxable years, and to the same extent, as is provided in section 683.

"(2) Method of computing deduction.—For purposes of paragraph (1)—

"(A) The term 'estate tax' means the tax imposed on the estate of the decedent or any prior decedent under section 2001 or 2101, reduced by the credits against such tax.

"(B) The net value for estate tax purposes of all the items described in subsection (a) (1) shall be the excess of the value for estate tax purposes of all the items described in subsection (a) (1) over the deductions from the gross estate in respect of claims which represent the deductions and credit described in subsection (b). Such net value shall be determined with regard to the provisions of section 421(d) (6) (B), relating to the deduction for estate tax with respect to restricted stock options.

"(C) The estate tax attributable to such net value shall be an amount equal to the excess of the estate tax over the estate tax computed without including in the gross estate such net value." 26 U.S.C.A. (I.R.C.1954) § 691.

This amount, the Government contends, and the district court held, is the correct amount of the tax of the estate for the year 1955. Deducting this amount from the $302,213.20 which the estate paid, the Government finds an overpayment of $6,716.79. The Government would apply the estate tax deduction, and other deductions, against the estate's ordinary income of $30,624.15, with the result that, since the deductions exceed the ordinary income, no tax with respect to it would be payable.

| | |
|---|---:|
| Against the Gerry mortgage capital gain of | $1,093,305.51 |
| the estate would offset the estate tax deduction of | 184,996.51 |
| leaving a taxable capital gain of | 908,309.00. |
| Adding other gains of | 92,012.93 |
| would result in a total of capital gain of | 1,000,321.93 |
| on which a 25% tax would be | 250,080.48. |
| The tax on the ordinary income, as computed by the executrix, would be | 8,659.02 |
| with a total tax of | $ 258,739.50 |

Against this amount would be applied the credits of $833.20 and a net tax of $257,906.30. Deducting this from the amount of $302,213.20 leaves $44,306.90 which the executrix claims is the amount due the estate as an overpayment.

The issue, more easily stated than resolved, is whether the estate tax deduction which is allowable under Section 691 is available as an offset against capital gains when the tax on such income is computed under the alternative tax method. The Government relies heavily upon Weil v. Commissioner, 6th Cir. 1957, 229 F.2d 593. Previous to this controversy it had converted the Tax Court's Weil decision into a ruling [2] broader in scope and effect than the decision. No estate income was involved in the Weil case and no estate tax deduction was involved. The Weils sought to use a deduction for charitable contributions in computing their capital gains tax by the alternative method. The court affirmed the Tax Court in sustaining the disallowance of the deduction in the alternative computation. Charitable deductions sprang from profound concern for human welfare.[3] They are to be distinguished from those deductions which are designed as a protection, more or less, against encroachment on capital.[4] The Sixth Circuit has confined the Weil case to its facts and has held that capital charges may be properly applied against capital gains before making the tax computation by the alternative method. United States v. Memorial Corporation, 6th Cir. 1957, 244 F.2d 641.

The Government argues that since there is no express provision making the deduction applicable in alternative tax computations, it is clear and certain that the deduction cannot be taken. The executrix, with like logic, contends that the deduction is permitted and if it were to be withheld in capital gains taxation the statute would have said so. We profit but little from such reasoning. We do not think it can be said that the language of the statute is of itself decisive of the question. The determina-

2. Rev.Rul. 56–151, 1956–1 C B 382.

3. Commissioner v. Citizens & Southern National Bank, 5th Cir. 1945, 147 F.2d 977.

4. Mertens, Law of Federal Income Taxation § 31–01.

tion of the cause depends upon a construction of the statute and we are charged with the duty to decide what that construction shall be. White v. United States, 305 U.S. 281, 59 S.Ct. 179, 83 L.Ed. 172. See United States v. Ivey, 5th Cir. 1961, 294 F.2d 799.

■ Mertens has this to say of the Code section:

"The purpose of Section 691(c) of the 1954 Code (formerly Section 126(c) of the 1939 Code), dealing with the 'deduction for estate tax' is to provide approximately the same tax consequences in the case of a decedent whose gross estate includes claims to income as in the case of a decedent all of whose income receivables had been collected (and income tax paid thereon) prior to his death. In the latter case, only the income in cash or its equivalent, net after the income tax paid thereon, would be included in the gross estate for estate tax purposes. But in the case of a decedent whose claims to income are included in his gross estate, except for the provisions of Section 691(c) of the Code, the gross amount of the claims would be subject to estate tax and also to income tax when later collected. In this situation, to avoid the imposition of both estate tax and income tax on the full amount of the income claims, Section 691(c) provides that the recipient of income in respect of a decedent may deduct that portion of the estate tax which is attributable to the inclusion of the right to such income in the decedent's estate." Mertens, Federal Income Tax § 12–102(b).

To adopt the Government's view would result in the imposition of both estate and income tax on the income amounts where the alternative computation was used. There is no more reason to suppose that Congress intended such a result than to suppose that it intended that the right to use the deduction in the alternative method of computation in respect of such income should be allowed.

This seems to be borne out by the following from the Committee Report:

"Under existing law income in respect of a decedent which is received after his death by his estate or other beneficiaries is taxed to the recipients rather than being treated as accruing to the decedent in a lump sum immediately prior to his death. The recipients are allowed an offsetting deduction for any estate tax attributable to the inclusion of this right to income in the decedent's gross estate, but do not acquire a new basis for this property at the date of the decedent's death." S. Rep. No. 1622, H.R.Rep. No. 1337, 83d Cong., 2 Sess.

The offsetting is a *pro tanto* cancelling out. It works a reduction in the amount of the particular kind of income which is to be subject to taxation. There is equal purpose to be served and a like reason for allowing the deduction where the alternative tax computation is used as where it is not. The decision of the Court is reversed and the proceeding is remanded for a redetermination of the tax under the principle here stated.

Reversed and remanded.