THOMAS M. CHASTAIN, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7278–70. Filed December 27, 1972.

*Robert O. Rogers,* for the petitioner.
*Richard V. Holloway* and *Robert W. Goodman,* for the respondent.

#### OPINION

RAUM, *Judge:* The Commissioner determined a $162,463.32 deficiency in petitioner's 1966 income tax. Pursuant to section 691(a) of the 1954 Code petitioner had reported a $632,402.84 long-term capital gain in his 1966 income tax return as income in respect of a decedent, and he had claimed a deduction of $439,856.99 under section 691(c) for estate taxes attributable to that item. Although the Commissioner treated section 691(c) as applicable, he determined, upon the basis of his computations under that section, that petitioner was not entitled to any deduction thereunder. The sole matter in dispute relates to the proper method of computing the deduction, with particular reference to the effect of a residuary charitable bequest. The facts have been stipulated.

Thomas M. Chastain (petitioner) filed an individual Federal income tax return for the calendar year 1966 with the district director of internal revenue at Jacksonville, Fla. He resided in Palm Beach, Fla., at the time he filed his petition herein.

Petitioner's father, Robert Lee Chastain, died testate on June 9, 1964. Prior to his death he had conveyed certain real estate to one George Caulkins, and among his assets at the time of death were two mortgage notes receivable from Caulkins in the amounts of $641,765.32

and $152,734.68. The excess of the face amount of each note over its basis in decedent's hands was $632,402.84 and $150,506. 49, respectively, and would have represented long-term capital gain to decedent if he had received payment upon the notes. The aggregate of such unrealized gains on the Caulkins notes at the time of death was $782,909.33.

Article III of decedent's will provided that the Caulkins notes should be included in a bequest to petitioner, as follows:

## ARTICLE III

I give and bequeath to my son, THOMAS MALCOLM CHASTAIN, the sum of ONE MILLION ($1,000,000.00) DOLLARS, which shall include the two mortgages given me by George Caulkins for the purchase of certain lands, the stock which I own in the Atlantic National Bank of West Palm Beach, and such of the Florida Power and Light Company stock as will be required to make up the total of One Million ($1,000,000.00) Dollars. * * *

The will also made a number of other bequests and then provided for the gift of the residue to a charitable foundation, directing that "all estate taxes be paid from the residue."

The decedent's Federal estate tax return was duly filed, and the gross estate therein was valued as of the date of death. The Commissioner made certain adjustments to the return, none of which was contested by the representatives of the estate or is now objected to by petitioner. The net estate tax payable, with the Commissioner's adjustments taken into account, was $911,346.85. That amount was computed as follows:

| | | |
|---|---|---|
| Gross estate | | $4, 513, 522. 29 |
| Deductions: | | |
| Charitable deduction in respect of the residuary bequest to the foundation | $1, 476, 388. 30 | |
| Others | 336, 953. 66 | |
| | | 1, 813, 341. 96 |
| | | 2, 700, 180. 33 |
| Exemption | | 60, 000. 00 |
| Taxable estate | | 2, 640, 180. 33 |
| Gross estate tax | | 1, 072, 495. 54 |
| Credits: | | |
| State death taxes paid | 155, 615. 86 | |
| Federal gift taxes paid | 5, 532. 83 | |
| | | 161, 148. 69 |
| Net estate tax payable | | 911, 346. 85 |

Because decedent's will had provided that estate taxes should be paid out of the residue of his estate which was otherwise bequeathed to the charitable foundation and because the amount of that bequest was allowable as a deduction in computing the taxable estate, the amounts of the estate tax liability and the charitable deduction were dependent upon one another. In the estate tax return an algebraic formula consisting of two simultaneous linear equations was used to compute these respective amounts. The Commissioner applied the same formula in the audit of the estate tax return.

At the time of decedent's death, there existed certain items of unrealized income that fell within section 691(a)[1] and certain items of deduction that were covered by section 691(b).[1] The section 691(a) income items were in the aggregate amount of $793,092.06 (consisting of the $782,909.33 unrealized gains on the Caulkins notes plus $10,182.73 of other unrealized income); and the section 691(b) deduction items were in the aggregate amount of $12,161.21.[2] Thus, the net value of all these items was $780,930.85 ($793,092.06 minus $12,161.21).

---

[1] SEC. 691. RECIPIENTS OF INCOME IN RESPECT OF DECEDENTS.

(a) INCLUSION IN GROSS INCOME.—

(1) GENERAL RULE.—The amount of all items of gross income in respect of a decedent which are not properly includible in respect of the taxable period in which falls the date of his death or a prior period * * * shall be included in the gross income, for the taxable year when received, of:

*     *     *     *     *     *     *

(C) the person who acquires from the decedent the right to receive the amount by bequest, devise, or inheritance, if the amount is received after a distribution by the decedent's estate of such right.

*     *     *     *     *     *     *

(3) CHARACTER OF INCOME DETERMINED BY REFERENCE TO DECEDENT.—The right, described in paragraph (1), to receive an amount shall be treated, in the hands of * * * any person who acquired such right * * * by bequest, devise, or inheritance from the decedent, as if it had been acquired by * * * such person in the transaction in which the right to receive the income was originally derived and the amount includible in gross income under paragraph (1) * * * shall be considered in the hands of * * * such person to have the character which it would have had in the hands of the decedent if the decedent had lived and received such amount.

(4) INSTALLMENT OBLIGATIONS ACQUIRED FROM DECEDENT.—In the case of an installment obligation received by a decedent on the sale or other disposition of property, the income from which was properly reportable by the decedent on the installment basis under section 453, if such obligation is acquired * * * by any person * * * by bequest, devise, or inheritance from the decedent—

(A) an amount equal to the excess of the face amount of such obligation over the basis of the obligation in the hands of the decedent (determined under section 453(d)) shall, for the purpose of paragraph (1), be considered as an item of gross income in respect of the decedent; and

(B) such obligation shall, for purposes of paragraph * * * (3), be considered a right to receive an item of gross income in respect of the decedent * * *.

(b) ALLOWANCE OF DEDUCTIONS AND CREDIT.—The amount of any deduction specified in section 162, 163, 164, 212, or 611 (relating to deductions for expenses, interest, taxes, and depletion) or credit specified in section 33 (relating to foreign tax credit), in respect of a decedent which is not properly allowable to the decedent in respect of the taxable period in which falls the date of his death, or a prior period, shall be allowed:

(1) EXPENSES, INTEREST, AND TAXES.—In the case of a deduction specified in section 162, 163, 164, or 212 and a credit specified in section 33, in the taxable year when paid—

(A) to the estate of the decedent; except that

(B) if the estate of the decedent is not liable to discharge the obligation to which the deduction or credit relates, to the person who, by reason of the death of the decedent or by bequest, devise, or inheritance acquires, subject to such obligation, from the decedent an interest in property of the decedent.

[2] These deduction items do not appear to have been treated as relating to the Caulkins notes.

Petitioner received payment in full during 1966 on one of the Caulkins notes, in the amount of $641,765.32. As noted above, in his income tax return for that year, he reported $632,402.84 as a long-term capital gain, which represented the excess of the amount realized upon collection of that note over its basis in the hands of his father. That was the only item of income in respect of a decedent which petitioner received in 1966, and he claimed a deduction of $439,856.99 under section 691(c)[3] in respect of that item. After making his own section 691(c) computation, the Commissioner determined that petitioner was not entitled to any deduction thereunder.

The parties are not in disagreement as to the general operation of section 691(c). First, a fraction is determined in which the numerator consists of the section 691(a) items of income received by the taxpayer during the year and in which the denominator consists of the sum of all the section 691(a) items. That fraction in this case is $\frac{632,402.84}{793,092.06}$. So much is agreed to by the parties. That fraction is then to be multiplied by the amount of estate tax "attributable to the net value for estate tax purposes of all" the section 691(a) items. Both parties agree that the "net value," computed pursuant to section 691(c)(2)(B), is $780,930.85. Their disagreement relates solely to the determination of the amount of estate tax "attributable to" this net value of $780,930.85.

In his 1966 return petitioner computed the estate tax attributable to the net value of the section 691[4] items as $551,621.62, and, upon applying the foregoing fraction to that amount, arrived at a section 691(c) deduction in the amount of $439,856.99. The Commissioner, on the other hand, determined that no estate tax at all was attributable to the $780,930.85 net value of the section 691 items, and that therefore no deduction was available under section 691(c). Petitioner contends on brief that both parties were in error in their computations,

---

[3] SEC. 691. RECIPIENTS OF INCOME IN RESPECT OF DECEDENTS.

(c) DEDUCTION FOR ESTATE TAX.—

(1) ALLOWANCE OF DEDUCTION.—

(A) GENERAL RULE.—A person who includes an amount in gross income under subsection (a) shall be allowed, for the same taxable year, as a deduction an amount which bears the same ratio to the estate tax attributable to the net value for estate tax purposes of all the items described in subsection (a)(1) as the value for estate tax purposes of the items of gross income or portions thereof in respect of which such person included the amount in gross income (or the amount included in gross income, whichever is lower) bears to the value for estate tax purposes of all the items described in subsection (a)(1).

* * * * * * *

(2) METHOD OF COMPUTING DEDUCTION.—For purposes of paragraph (1)—

(A) The term "estate tax" means the tax imposed on the estate of the decedent or any prior decedent under section 2001 or 2101, reduced by the credits against such tax.

(B) The net value for estate tax purposes of all the items described in subsection (a)(1) shall be the excess of the value for estate tax purposes of all the items described in subsection (a)(1) over the deductions from the gross estate in respect of claims which represent the deductions and credit described in subsection (b). * * *

(C) The estate tax attributable to such net value shall be an amount equal to the excess of the estate tax over the estate tax computed without including in the gross estate such net value.

[4] Petitioner in his computation used a $770,748.12 figure as the net value of the sec. 691 items, instead of $780,930.85 which the parties now agree is the correct amount;

and he now proposes a computation that results in a substantially smaller deduction than originally claimed by him. The Commissioner continues to rely upon his original position that no deduction whatever is allowable. We agree with petitioner's revised position. The heart of the controversy is the effect of the residuary charitable bequest to the foundation, which we shall consider shortly.

The statute itself sets forth the manner in which the computation in question shall be made. Section 691(c)(2)(C) provides: "The estate tax attributable to such net value shall be an amount equal to the excess of the estate tax over the estate tax computed without including in the gross estate such net value." In substance, these provisions require a recomputation of the estate tax by excluding all section 691 items, and then subtracting the recomputed tax from the actual tax. See *Nat Harrison Associates, Inc.*, 42 T.C. 601, 627, acq. 1965-2 C.B. 5. The basic dispute between the parties relates to the effect, if any, that the elimination of the section 691 items in the recomputation should have upon the residuary charitable bequest to the foundation, which in turn plays a part in the computation of the tax. The three different possibilities placed before us are as follows:

1. The computation on petitioner's return reduced the amount of the gross estate by the amount of the section 691 items, and then proceeded to recompute the residuary charitable bequest on the theory that a lower estate tax would increase the amount of that residue. The deduction of the hypothetical augmented charitable bequest in turn produced an even lower estate tax. Thus, it was assumed in that computation that the amount of the residue paid over to the foundation was $2,139,124.22, instead of the $1,476,388.30 residue that was actually paid to it. And as a result of the elimination of the section 691 items from the estate together with the increase in the amount of the charitable deduction, petitioner arrived at a recomputed "net" estate tax in the amount of $359,725.23. That amount was then subtracted from the actual net estate tax of $911,346.85, leaving $551,621.62 as the amount of estate tax claimed to be "attributable to" the net value of the section 691 items.

2. The respondent's recomputation also involves a theoretical recasting of the charitable bequest of the residue. Although he eliminated the net value ($780,930.85) of the section 691 items from the gross estate, he assumed that petitioner would still be entitled to his $1 million bequest in full. In short, he assumed that notwithstanding that the Caulkins notes were part of the $1 million bequest to petitioner, the elimination of the gain on such notes from the gross estate on the recomputation under section 691(c)(2)(C) would not diminish the $1 million bequest, and in order to achieve that result he in effect charged the entire net amount of the section 691 items ($780,930.85) against the residuary bequest. Thus, in his recomputation the respond-

ent assumed a residuary charitable bequest of $695,457.45 instead of the actual residuary bequest of $1,476,388.30. By decreasing both the gross estate and the residuary charitable bequest by $780,930.85, the respondent arrived at a recomputed taxable estate identical in amount to the actual taxable estate. Accordingly, the difference between the actual tax and the recomputed tax was zero, and respondent concluded that no part of the estate tax was therefore "attributable to" the section 691 items.

3. Petitioner on brief proposes a third computation, urging that both of the foregoing computations are erroneous because they assume a residuary gift to the foundation in an amount that was not in fact made. He now contends that the correct computation requires the elimination of the section 691 items ($780,930.85) from the gross estate without otherwise changing the amount of the residuary bequest that was actually paid to the foundation. He thus recomputes an estate tax of $594,392.53 which is then subtracted from $911,346.85, leaving $316,954.32 as the "estate tax attributable to" the net value of the section 691 items. After applying the appropriate fraction to this amount, he arrives at a section 691(c) deduction in the amount of $252,736.20. We hold that this method is correct.

Both the Government's method and petitioner's original method employed in his return share a common flaw. They are both based on the assumption that the charitable deduction in respect of the residue would have been substantially different in amount upon the exclusion of the section 691 items from the decedent's estate. Thus, although the residuary charitable gift was actually in the amount of $1,476,388.30, petitioner's original computation assumed that the residue was $2,139,124.22, while the Commissioner assumed that it was $695,457.45. Both of these assumptions distort one of the primary objectives of section 691(c), which is to allocate to the net value of the section 691 items an amount which roughly approximates the portion of the estate tax that was actually imposed on such net value. In order to accomplish this result it is necessary only to subtract the section 691 items from the items on the estate tax return to which they pertain, and then to make a recomputation without assuming any further change in the facts. This is in substance the method proposed by petitioner on brief, and we think it is correct.

The Government has constructed an elaborate argument based upon an alleged purpose of the statute to "equalize the tax consequences, upon the estate and income taxes involved, between collection of accrued items of income belonging to a decedent before and collection after his death." No committee reports or any other legislative materials are cited as directly supporting any such congressional objective, but some such legislative purpose has been assumed by

some commentators [5] and referred to in several judicial opinions.[6] Although we may well accept the assumption that such was one of the purposes of the statute,[7] we think it has no application to support the position advocated by the Government in this case.

The fallacy in the Government's position may be perceived by assuming that instead of making a residuary bequest to the foundation that turned out to be $1,476,388.30, the decedent made a specific bequest to the foundation in precisely the same amount. Upon a recomputation under section 691 (c) (2) (C), only the section 691 items would be eliminated from the bequests to which they relate, but no further alteration in any bequest would be allowed. The recomputation would then proceed in the manner proposed by petitioner on brief. Surely, no such vast difference in result as the one for which respondent contends in this case can or should turn upon the fact that the charitable bequest in the identical amount was in the form of a residuary bequest rather than a specific bequest, and nothing in the alleged purpose of the statute relied upon by the Government calls for any such difference in result. In both situations the amount of estate tax "attributable to" the net value of the section 691 items is the same, and that amount is properly computed by following the method proposed by petitioner in his brief.

The Government relies in part upon Rev. Rul. 67–242, 1967–2 C.B. 227, which in turn relies upon section 1.691(c)–1(a)(2) and example (2) in section 1.691(d)–1(e) of the Income Tax Regulations. The ruling and the regulations are concerned with the effect of the elimination of the section 691 items upon such items as the marital deduction in the recomputation under section 691(c)(2)(C). Obviously, the exclusion of the section 691 items may have an effect upon the computation of such deductions as the marital deduction, and the revenue ruling thus applies section 1.691(c)–1(a)(2) of the regulations, which provides that in the recomputation "any estate tax deduction (such as the marital deduction) which may be based upon the gross estate shall be recomputed so as to take into account the exclusion of such net value from the gross estate." That recomputation, however, assumes as fact only the elimination of the section 691

---

[5] See 2 Mertens, Law of Federal Income Taxation, sec. 12.102b, p. 380 (1967 rev.); Ferguson, Freeland & Stephens, Federal Income Taxation of Estates and Beneficiaries 285 (1970); Brown, "Income in Respect of a Decedent," 55 Cornell L. Rev. 211, 213–214, fn. 19 (1970).

[6] See *Goodwin* v. *United States*, 458 F. 2d 108, 109–111 (Ct. Cl.); *Meissner* v. *United States*, 364 F. 2d 409, 412 (Ct. Cl.); *Read* v. *United States*, 320 F. 2d 550, 553 (C.A. 5).

[7] There was also at least the purpose "to give some relief" against the double taxation which occurs when "the same item is included in a decedent's gross estate for estate tax purposes and is thereafter also included for income tax purposes in the measure of gross income of the estate or of a beneficiary." See dissenting opinion in *H. Lloyd Hess*, 31 T.C. 165, 179, nonacq. 1960–1 C.B. 7, which was reversed on this point 271 F. 2d 104, 108–109 (C.A. 3).

items; there is no assumption of any modification of any gift to the surviving spouse (except to the extent that a 691 item may have been part of the bequest to that spouse). It is therefore entirely proper to apply all the statutory rules (including those governing the determination of the amount of the marital deduction) in the recomputation of the tax, based on the assumption, however, that the composition and disposition of the estate are to be considered as modified only by the exclusion of the section 691 items and in no other manner. Neither the revenue ruling nor the regulations, when properly understood, call for any revision or any modification of any particular bequest apart from the elimination of the section 691 items. They certainly do not require a recomputation based upon an assumption that any particular bequest was in fact different from the one actually made, except to the extent that the excluded section 691 items were related to and thus altered the amount of such bequest. It is therefore fallacious to treat the residuary charitable bequest as comparable to the marital deduction. The marital deduction involves merely a *computation* based upon certain · assumed facts. The charitable deduction, on the other hand, depends upon the amount actually bequeathed to the charitable beneficiary, and we can find no justification for applying the revenue ruling or regulations in such manner as to convert a $1,476,388.30 charitable bequest into one in the amount of $695,457.45, as was done in the Government's computation. We hold that the method proposed by petitioner is sound.

---

In view of our conclusion, we do not reach the alternative issue raised in the Commissioner's amended answer, which involves the relationship between the section 691(c) deduction and the 50-percent deduction under section 1202 in respect of long-term capital gain. Since the $632,402.84 item of income in respect of a decedent reported by petitioner in his 1966 return was long-term capital gain, which formed the basis for a 50-percent deduction under section 1202 taken by petitioner,[8] and since petitioner also claimed a deduction of $439,856.99 under section 691(c) in respect of the same item of income, the Commissioner took the position in his amended answer that the amount of the section 691(c) deduction must be limited in such manner that the two deductions together could not exceed the amount of the $632,402.84 income in question. As a result of our decision approving petitioner's revised method of computing the

---

[8] In his return petitioner first reduced the $632,402.84 capital gain by $8,158.70 in net long-term capital losses sustained in respect of certain securities, and then further reduced it by $266.91 in respect of certain short-term capital losses. The resulting net gain was thus $623,977.23 from which the 50-percent deduction under sec. 1202 was taken, and the remaining $311,988.61 was included in taxable income.

section 691(c) deduction, both deductions do not exceed the amount of the income in question and the issue raised by the amended answer therefore becomes moot.

We also take note of a related issue suggested by the Government on brief, concerning the manner in which the section 691(c) deduction is to be taken into account vis-a-vis the section 1202 deduction. The Government argued that the correct method is to apply the section 691(c) deduction as an offset against the long-term capital gain (rather than as a deduction from ordinary gross income) and then to compute the 50-percent deduction under section 1202 in respect of the long-term capital gain as thus reduced. Cf. *Read* v. *United States*, 320 F. 2d 550, 553 (C.A. 5). However, the Government recognizes that this issue is not properly before us (except to the extent that it might support the alternative issue raised by the amended answer which we have found to be moot); accordingly, we do not express any opinion upon it.

*Decision will be entered under Rule 50.*