ESTATE OF Wendell CHERRY, et al., Plaintiffs

v.

UNITED STATES of America, Defendant

No. CIV. A. 3:97CV–697–S.

United States District Court, W.D. Kentucky, at Louisville.

Jan. 24, 2001.

---

Mark Francis Sommer, Thomas A. Brown, John R. Cummins, John Steven Lueken, Greenebaum Doll & McDonald, Louisville, KY, for Plaintiffs, Wendell Cherry Trust UA, # 33–23–00000, By and Through National City Bank of Kentucky, Trustee; Dorothy M. Cherry; and National City Bank, Kentucky, Executor.

Darren D. Farfante, Stuart M. Fischbein, United States Department of Justice, Tax Division, Washington, DC, for Defendant, United States of America.

## MEMORANDUM OPINION

SIMPSON, Chief Judge.

This case presents a dispute concerning the tax implications of the interaction between the marital deduction and income in respect of the decedent. The parties have worked together to stipulate all material facts, and at several periods through the long life of this case, the parties asked for time to achieve a negotiated resolution. Finally, however, the matter is presented to this Court for decision. For the reasons set forth below, the Court will enter judgment in favor of the United States.

In December of 1968, Wendell Cherry created the plaintiff Trust by an instrument specifying that the trust would become irrevocable upon his death. In 1977, he married the plaintiff Dorothy Morton, and their union lasted until his death in mid–1991. By the terms of Mr. Cherry's 1990 will, both Mrs. Cherry and the Trust (hereinafter referred to as "Taxpayers") were beneficiaries of the Estate. The will made specific bequests and directed that the residue of the Estate would pass to the Trust, which would also bear all estate taxes.

During his lifetime, Mr. Cherry earned certain deferred benefits that were payable (and, therefore, taxable) only by virtue of his death. Although "income in respect of a decedent" ("IRD") is not statutorily defined, the parties agree that these deferred benefits, totaling $6,901,248.16, constituted "IRD" within the meaning of 26 U.S.C. Sec. 691(a). That is, these benefits were included in their entirety in the taxable estate, and would also be subject to income taxation when received by the Trust and/or by Mrs. Cherry.

Congress enacted the predecessor of Section 691(a) to correct an existing inequity between decedents using cash accounting and those using accrual methods of accounting. See, e.g., *Estate of Davison v. United States,* 292 F.2d 937, 939, 155 Ct.Cl. 290 (1961). Unfortunately, the remedy—i.e., treating all income to be received after death as being received upon death—created another species of unfairness, and Congress responded in 1942 by creating the concept of IRD, "to eliminate the neanderthal tax effect caused by the income pyramiding under the predecessor provision, while at the same time continuing the basic policy of subjecting earned income of a cash basis taxpayer to the income tax despite the fact of death." *Sun First National Bank of Orlando v. United States of America,* 587 F.2d 1073, 1083, 218 Ct.Cl. 339 (1978). Section 691[1] prescribes a method of deducting from income tax the amount of estate tax attributable to IRD, to avoid "imposition of both estate and income taxes on sums included in an estate as income in respect of a decedent." *United California Bank v. United States,* 439 U.S. 180, 187, 99 S.Ct. 476, 481, 58 L.Ed.2d 444 (1978).[2]

As the parties agree that the sums constituted IRD, they also agree that a deduction from income tax was appropriate. Thus, the United States concedes that the Taxpayers are due refunds due to overpayment of income tax. The intractable dispute concerns the amount of overpayment, which turns on the manner in

---

**1.** (c)(1)(A) General rule.—A person who includes an amount in gross income under subsection (a) shall be allowed, for the same taxable year, as a deduction an amount which bears the same ratio to the estate tax attributable to the net value for estate tax purposes of all the items described in subsection (a)(1) as the value for estate tax purposes of the items of gross income or portions thereof in respect of which such person included the amount in gross income (or the amount included in gross income, whichever is lower) bears to the value for estate tax purposes of all the items described in subsection (a)(1).

**2.** While it might seem mathematically simpler and more logical to solve the double taxation problem by deducting the amount of income taxes from the estate taxes, this is impractical given that the estate might well be wound up long before the income is actually received and taxes paid thereon.

which the marital share is treated. 26 U.S.C. Sec.2056 excludes from calculation of estate tax the portion of the estate that passes to a surviving spouse (with some qualifications not relevant here).[3] The Executor qualified the Trust for this marital deduction.

■ The parties broadly agree that the Section 691(c)(1)(A) deduction is to be determined by comparing the actual estate tax with the hypothetical tax on an estate which did not include the IRD. The actual estate tax was $9,561,956.74. By the terms of the will, this tax was borne in its entirety by the Trust (qualified by the executor as marital share). However, the parties disagree concerning the method of calculating the hypothetical tax. There is neither statutory nor clear case authority to guide us, and both parties rely strongly on reason and public policy, appealing ultimately to the purpose of the Section 691.

To determine the hypothetical tax, the Taxpayers propose a calculation method by which the IRD is first subtracted from the gross estate, and the estate tax is then recalculated "without adjusting the marital deduction." The Taxpayers reason that "the IRD must of necessity be allocated other than to the marital share inasmuch as the IRD has been removed from the estate entirely." Plaintiffs' Brief in Support of Summary Judgment at 28. The third step involves "an interrelated calculation" to adjust the estate taxes to take into account the interrelation of the estate taxes and the residuary marital deduction (because of the circumstance of all taxes being paid from the Trust corpus). Taxpayers argue that this method is necessary to avoid placing the Estate in a marginal tax bracket in excess of 100% on the pre-residuary bequests (of approximately $11,000,000), thus resulting in excessive

tax, the evil Section 691 was designed to prevent.

The United States faults the Taxpayers' reasoning, arguing that in actuality, the proposed calculation fails to remove the IRD at the first step. This gives an inflated marital deduction, which in turn reduces the interrelated tax computation, and ultimately results in a Section 691 deduction that is actually *greater* than the IRD itself. The United States contends that it is illogical to suggest that the amount of estate tax resulting from the presence of the IRD could ever exceed the amount of the IRD itself, and it argues that the plaintiffs' proposal fails to serve the goals of Section 691. Even assuming that the Estate is in a marginal tax bracket exceeding 100% as to the pre-residual bequests, the government argues that this results from the choices Mr. Cherry made in drawing the will and Trust instrument, and that it is inappropriate to attempt to modify those choices by ignoring the established methods of calculating the Section 691 deduction.

The plaintiff Taxpayers contend that their approach was approved in *Chastain v. Commissioner of Internal Revenue,* 59 T.C. 461, 1972 WL 2548 (1972). The decedent in that case had bequeathed to the plaintiff a specific sum that included IRD; the residuary, from which the estate tax was to be paid, was left to a charitable foundation. The parties disagreed concerning the method of computing the hypothetical estate tax (i.e., excluding the IRD). The Court rejected the notion that removing the IRD would change the value of the residue (i.e., the charitable donation), stating that one of the primary objectives of the Section 691 deduction is

> to allocate to the net value of the section 691 items an amount which roughly approximates the portion of the estate tax that was actually imposed on such net

---

**3.** (a) Allowance of marital deduction.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall ... be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.

value. In order to accomplish this result it is necessary only to subtract the section 691 items from the items on the estate tax return to which they pertain, and then to make a recomputation without assuming any further change in the facts.

59 T.C. at 466.

The *Chastain* court contrasted the circumstance of a charitable deduction (which depends upon the amount actually bequeathed to the charity) with the marital deduction, which "involves merely a computation based upon certain assumed facts." *Id.* The Court stated as follows:

> [The] recomputation ... assumes as fact only the elimination of the section 691 items; there is no assumption of any modification of any gift to the surviving spouse (except to the extent that a 691 item may have been part of the bequest to that spouse). It is therefore entirely proper to apply all the statutory rules (including those governing the determination of the amount of the marital deduction) in the recomputation of the tax, based on the assumption, however, *that the composition and disposition of the estate are to be considered as modified only by the exclusion of the section 691 items and in no other manner.*

*Id.* (emphasis added).

The United States contends that the plaintiffs' reliance on *Chastain* is misplaced, in that the case actually supports the position that the IRD must be deducted from the gross estate as the first step of the hypothetical computation. The United States points to the following language in the opinion:

> Obviously, the exclusion of section 691 items may have an effect upon the computation of such deductions as the marital deduction, and the revenue ruling thus applies section 1.691(c)–1(a)(2) of the regulations, which provides that in the recomputation 'any estate tax deduction (such as the marital deduction) which may be based upon the gross estate shall be recomputed so as to take

into account the exclusion of such net value from the gross estate.'

*Id.* at 467.

To the extent that *Chastain* has any bearing on the instant dispute, we believe it favors the current position of the United States. We base this conclusion on *Chastain*'s insistence that the first step in the hypothetical computation is to subtract the IRD from the "items to which they pertain." In this case, the IRD is not the subject of a specific bequest (contrary to the situation in *Chastain*). Rather, the IRD is part of the residue, goes to the Trust, i.e., the marital share; if the IRD is removed from the gross estate, it must be removed from the marital share. Thus, it would appear that *Chastain* fails to support Taxpayers' argument that the IRD should be attributed to other than the marital share. At a minimum, we take from *Chastain* the counsel that in computing the hypothetical tax, the IRD should be removed from the gross estate prior to taking any other steps.

Taxpayer plaintiffs also rely on *Estate of Kincaid v. Commissioner*, 85 T.C. 25, 1985 WL 15369 (1985). This case arose in a legal environment that included a maximum marital share of fifty percent of the estate. The testator had included a maximum marital deduction bequest. The surviving spouse was entitled to receive IRD in the form of deferred compensation, and most of Mr. Kincaid's other property went to a trust of which Mrs. Kincaid was a beneficiary; however, the estate included sufficient assets to have funded the maximum marital share by non-IRD property. The Court rejected the suggestion that the IRD should be subtracted from both the gross estate and the marital share, and held that because there was a specific bequest requiring that Mrs. Kincaid receive property equal to the maximum marital deduction (50%), in the recomputation (in which there was no IRD available), the marital share must be funded fully by non-IRD property.

The Taxpayer plaintiffs contend that *Kincaid* stands for the proposition that a

Section 691 deduction should be allowed regardless of how funds are actually allocated between marital and non-marital shares, and that the case "provides that the IRD must of necessity be allocated other than to the marital share in the second calculation, inasmuch as the IRD is, by statute, removed from the estate entirely." Plaintiffs' Brief in Support of Motion for Summary Judgment at 34. The United States, on the other hand, points to the portion of *Kincaid* that specifically acknowledged Treas. Reg. 1.691.(c)–1(a)(2), which calls for the marital deduction to be recomputed to take into account the exclusion of the IRD.

Again, to the extent that *Kincaid* can be viewed as addressing a situation in which the marital share is not the subject of a specific bequest, we believe it favors the government's position. In *Kincaid*, the marital portion was the subject of a specific bequest, and specific bequests must be satisfied prior to disposition of the residue; therefore, when the IRD was removed from the estate, the specific bequest would necessarily have to be satisfied by non-IRD property. In the present case, however, the marital share is not the subject of a specific bequest; consequently, *Kincaid* provides no support for maintaining the size of the marital share as a constant once the IRD is removed from the gross estate.

Thus, while the authority is hardly overwhelming, it does appear to favor the position of the government. However, when we look specifically for the approach which will best further the purposes of Section 691, our confidence in rejecting the Taxpayers' proposal is greatly strengthened. As noted earlier, the purpose of Section 691 deduction is to diminish the tendency toward double taxation by allowing a deduction from income tax for the portion of the estate tax fairly attributable to the presence of the IRD in the estate. The logical way to accomplish this goal is first to calculate the estate tax on the entire amount (including therein the ordinary consideration of marital share), and then to begin the recomputation by removing the IRD before proceeding in the customary fashion (including therein a *recomputation* of the marital share). This is the government's approach. By contrast, the Taxpayers' approach (which attempts to bypass recomputation of the marital share) yields a nonsensical result, i.e., the suggestion that the amount of tax attributable to the presence of the IRD in the estate is greater than the amount of the IRD itself.

An order in conformity has this day entered.

### JUDGMENT

This matter having come before the Court on cross motions for summary judgment, and the Court having entered its Memorandum Opinion and being advised,

IT IS ORDERED that the plaintiff's motion for summary judgment is denied.

IT IS FURTHER ORDERED that the defendant's motion for summary judgment is granted.

This is a final and appealable order and there is no just cause for delay.