**SUN FIRST NATIONAL BANK OF ORLANDO, and Marcia Andersen Murphy, as Co-Trustees of the Jeanette Andersen Trust**

v.

**The UNITED STATES.**

No. 558–76.

United States Court of Claims.

Nov. 15, 1978.

David W. Hedrick, Orlando, Fla., attorney of record, and John J. Reid, Orlando, Fla., for plaintiffs. Eugene B. Cawood and Giles, Hedrick & Robinson, Orlando, Fla., of counsel.

Bruce W. Reynolds, Washington, D. C., with whom was Asst. Atty. Gen. M. Carr

Ferguson, Washington, D. C., for defendant. Theodore D. Peyser, Jr., Washington, D. C., of counsel.

Before FRIEDMAN, Chief Judge, SKELTON, Senior Judge, and KASHIWA, Judge.

## ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

FRIEDMAN, Chief Judge:

This case, before us on cross-motions for summary judgment, presents two questions involving the federal income tax liability of a trust for capital gains it realized after the death of the settlor who was the income beneficiary of the trust during her lifetime: (1) Whether the gains were "income in respect of a decedent" under section 691 of the Internal Revenue Code of 1954, so that the trust was entitled to a deduction for the estate taxes that were attributable to the property upon which the gains were realized; (2) if the gains were not income in respect of a decedent, whether under section 1014(a) and (b)(9) of the Code, the trust was entitled to a stepped-up basis for the property, thereby reducing the gain subject to tax. We answer both questions negatively and grant the defendant's motion for summary judgment.

I.

In March 1941 Jeanette Andersen established an *inter vivos* trust. The trust income was to be paid to her for life and then to her daughter.[1] The principal asset she transferred to the trust was shares of Orlando Daily Newspapers, Inc., the publisher of two daily newspapers in Orlando, Florida, which her husband, Martin Andersen, had given her in 1936. Although the record does not show the value of the stock when Mrs. Andersen transferred it to the trust in 1941, it was valued at $11,000 in the gift tax returns filed in connection with Mr.

1. The trust agreement provided that following the death of Jeanette Andersen, the income was to be paid to her husband, Martin Andersen, for his life and then to her daughter. Martin Andersen renounced his life interest in the trust in 1967.

Andersen's transfer of the stock to his wife in 1936. *Estate of Andersen v. Commissioner*, 32 T.C.M. (CCH) 1164 (1973).

Orlando Newspapers prospered, and in 1965 the trust sold its Orlando stock for over $6,000,000. The trust received $1,557,441 in cash and 15 promissory notes payable annually from 1966 through 1980. Each of the first 14 notes was for $242,179.50, and the final note was for $1,453,077. The trustee reported the gain on the sale on the installment basis, pursuant to section 453 of the Code.

Because of the large increase in the value of the stock between the creation of the trust in 1941 and the sale in 1965, the trust realized substantial capital gain upon each note as it was paid. The trustee treated these gains as income to the trust rather than as an addition to the corpus. He paid most of this income to Jeanette Andersen. In 1967 a Florida court, in reviewing an accounting Martin Andersen made upon resigning as trustee, ruled that under Florida law this treatment of the gain was correct. For federal tax purposes the trust reported the entire capital gain from the notes as income for the years 1966 through 1972.

Jeanette Andersen died in December 1968. In her federal estate tax return, her executrix did not include the value of the corpus of the trust. On audit, however, the Commissioner of Internal Revenue included the corpus on the ground that Jeanette Andersen's retention of a life interest in the property she had transferred to the trust made that property part of her estate under section 2036 of the Code. The Tax Court upheld that determination. *Estate of Andersen, supra.*[2]

The trust then filed claims for refund for the years 1969 through 1972. Its theory was that because the corpus of the trust was includable in Jeanette Andersen's estate, she was the constructive owner of the trust property during her lifetime; and that the gain on the sale of the notes that were paid after her death was income in respect of a decedent, so that the recipient of such income (the trust) was entitled under section 691 of the Code to a deduction covering the estate tax paid on that income. The Internal Revenue Service rejected the claim for refund on the ground that the gain on the notes was not income in respect of a decedent. This suit followed.

## II.

A. Section 691(a) of the Code generally provides that "income in respect of a decedent" that is not part of the decedent's taxable income in the year of his death is taxable to the recipient of such income in the year of receipt if certain specified conditions are met.[3] Section 691(c) of the Code provides that the recipient of income in respect of a decedent is entitled to a deduction reflecting estate taxes paid by the de-

2. In the estate tax case before the Tax Court, the estate contended that Martin Andersen had continued to be the real owner of the stock even after he had given it to Jeanette in 1936, so that he, rather than Jeanette, was the settlor of the trust. The Tax Court, however, found that Martin had made an effective gift of the stock to Jeanette and that the corpus of the trust therefore was a part of her estate because of the life interest she retained in the trust.

3. I.R.C. § 691(a) provides in pertinent part:
"(1) General Rule.—The amount of all items of gross income in respect of a decedent which are not properly includible in respect of the taxable period in which falls the date of his death or a prior period (including the amount of all items of gross income in respect of a prior decedent, if the right to receive such amount was acquired by reason of the death of the prior decedent or by bequest, devise, or inheritance from the prior decedent) shall be included in the gross income, for the taxable year when received, of:
"(A) the estate of the decedent, if the right to receive the amount is acquired by the decedent's estate from the decedent;
"(B) the person who, by reason of the death of the decedent, acquires the right to receive the amount, if the right to receive the amount is not acquired by the decedent's estate from the decedent; or
"(C) the person who acquires from the decedent the right to receive the amount by bequest, devise, or inheritance, if the amount is received after a distribution by the decedent's estate of such right."

cedent's estate on any items constituting such income.[4]

In most cases that have arisen under these provisions the government has contended that particular items were income in respect of a decedent and therefore taxable to their recipients, and the recipients have denied that the items were in that category. The present case is the converse situation. Here the recipient (the trust) of the income (the gain on the notes) contends that the gain is income in respect of a decedent so that it may obtain a deduction for the estate taxes paid on the notes, and the government denies that the gain on the notes was income in respect of the decedent.

The purpose of these statutory provisions is revealed in their legislative history, which we described in *Estate of Davison v. United States*, 292 F.2d 937, 155 Ct.Cl. 290, *cert. denied*, 368 U.S. 939, 82 S.Ct. 380, 7 L.Ed.2d 337 (1961). The income-in-respect-of-a-decedent provision first appeared in the 1939 Code. Prior to 1934, neither a cash basis taxpayer nor his estate was subject to federal income taxes on income he had earned and accrued but not received prior to his death; those amounts were treated solely as part of the gross estate and thus subject to estate but not income taxes. *Nichols v. United States*, 64 Ct.Cl. 241 (1927), *cert. denied*, 277 U.S. 584, 48 S.Ct. 432, 72 L.Ed. 999 (1928). Congressional dissatisfaction with the discrimination between accrual and cash basis taxpayers and the concomitant loss of revenue from cash basis taxpay-

ers resulted in section 42 of the Revenue Act of 1934.[5] This provision required the inclusion as income in the final return of every decedent all income "accrued up to the date of his death" that was not income for any prior period.

This requirement resulted in the inclusion in the decedent's final return of income that otherwise would have been reported over several years, and thus subjected such income to higher marginal rates of taxation than if the decedent had lived to receive the income.[6] *Helvering v. Enright*, 312 U.S. 636, 61 S.Ct. 777, 85 L.Ed. 1093 (1941), exacerbated the situation by expanding the meaning of "accrued" for purposes of section 42 beyond prior accounting concepts of accrual; the provision was to be "construed in furtherance of the intent of Congress to cover into income the assets of decedents, earned during their life and unreported as income, which on a cash return, would appear in the estate returns." 312 U.S. at 644–645, 61 S.Ct. at 782.

Section 126 of the Internal Revenue Code of 1939, added in 1942,[7] eliminated the inequitable pyramiding effect of the accrual-at-death income concept of the prior law by incorporating in the Code the concept of "income in respect of a decedent." Such income was not included in the decedent's final income tax return, but was to be reported by the person receiving that income in the year of receipt. Those provisions were carried over into section 691 of the 1954 Code with only minor changes that are

---

4.  I.R.C. § 691(c) provides in pertinent part:
    "(1) Allowance of Deduction.—
    "(A) General Rule.—A person who includes an amount in gross income under subsection (a) shall be allowed, for the same taxable year, as a deduction an amount which bears the same ratio to the estate tax attributable to the net value for estate tax purposes of all the items described in subsection (a)(1) as the value for estate tax purposes of the items of gross income or portions thereof in respect of which such person included the amount in gross income (or the amount included in gross income, whichever is lower) bears to the value for estate tax purposes of all the items described in subsection (a)(1).

    "(B) Estate and Trusts.—In the case of an estate or trust, the amount allowed as a deduction under subparagraph (A) shall be computed by excluding from the gross income of the estate or trust the portion (if any) of the items described in subsection (a)(1) which is properly paid, credited, or to be distributed to the beneficiaries during the taxable year."

5.  Ch. 277, 48 Stat. 680, 694.

6.  H.R.Rep.No.2333, 77th Cong., 2d Sess. 48, 83–84, *reprinted in* 1942–2 C.B. 372, 411, 435–436; S.Rep.No.1631, 77th Cong., 2d Sess. 100, *reprinted in* 1942–2 C.B. 504, 579–580.

7.  Revenue Act of 1942, ch. 619, 56 Stat. 798, 831.

not significant to the disposition of the issue before us.

Congress did not define "income in respect of a decedent," and the definition of that term in the Treasury Regulation does not aid us here.[8] There is nothing in the history of section 126, however, to indicate that the new provision was intended to change the substantive content of the prior law which, as *Enright* stated, was designed "to cover into income the assets of decedents, earned during their life and unreported as income." *Estate of Davison, supra*, 292 F.2d at 941, 155 Ct.Cl. at 299; *Commissioner of Internal Revenue v. Linde*, 213 F.2d 1, 5–6 (9th Cir.), *cert. denied*, 348 U.S. 871, 75 S.Ct. 107, 99 L.Ed. 686 (1954). Congress understood "income in respect of a decedent" as comprising those items of income that, at the time of death, the decedent had earned or accrued but not yet received. *Grill v. United States*, 303 F.2d 922, 927, 157 Ct.Cl. 804, 813 (1962); *Keck v. Commissioner of Internal Revenue*, 415 F.2d 531, 534–535 (6th Cir. 1969); *Trust Co. of Georgia v. Ross*, 392 F.2d 694, 696 (5th Cir. 1967), *cert. denied*, 393 U.S. 830, 89 S.Ct. 97, 21 L.Ed.2d 101 (1968); *Estate of Sidles v. Commissioner*, 65 T.C. 873, 880 (1976), *aff'd mem.*, 553 F.2d 102 (8th Cir. 1977), *acq.* 1976–2 C.B. 2. The purpose of section 126 was to shift the income tax liability for income that the decedent had earned or accrued but not received before death from the decedent to the person who received the income after death.

■ B. Under these principles the gain the trust realized when the notes were paid was not income in respect of a decedent. Although Jeanette Andersen had the right to all the income of the trust during her

lifetime, that right terminated upon her death in December 1968. The income here involved—the gain on the notes that were paid between 1969 and 1972—was not her property but the property of her daughter, to whom the trust income was payable after her death. The gain upon the payment of those notes was not income that the decedent had earned or accrued prior to her death, the receipt of which was postponed until after her death. Instead it was income that, under the trust, belonged to the decedent's daughter. The decedent had no right to the income the trust realized after her death, since she was entitled to the income of the trust only during her lifetime.

The plaintiffs correctly point out that for income to be income in respect of a decedent it must be income that the decedent would have received had she been alive when it was received. But the converse does not follow. The fact that the decedent would have received the income if she had lived does not make it income in respect of a decedent unless it also was income that the decedent had earned or accrued during her life. The payments the trust received on the notes after Jeanette Andersen's death do not satisfy the latter qualification, since during her lifetime she had neither earned nor accrued the right to the income. She would have been entitled to the income reflecting the gain on each particular note only if she were alive in the year in which the note was paid.

This case does not involve the conditions that section 691 was designed to ameliorate. Since the trust's gain on the notes that were paid after 1968 concededly was income to the trust and not to the decedent, treating it as such income would not result in

8. Treas.Reg. § 1.691(a)–1(b), T.D. 6257, 1957–2 C.B. 342, 344, provides in pertinent part:

"*General definition.*—In general, the term 'income in respect of a decedent' refers to those amounts to which a decedent was entitled as gross income but which were not properly includible in computing his taxable income for the taxable year ending with the date of his death or for a previous taxable year under the method of accounting employed by the decedent. See the regulations under section 451. Thus, the term includes—

"(1) All accrued income of a decedent who reported his income by use of the cash receipts and disbursements method;

"(2) Income accrued solely by reason of the decedent's death in case of a decedent who reports his income by use of an accrual method of accounting; and

"(3) Income to which the decedent had a contingent claim at the time of his death."

non-taxation of any income of the decedent (as would have been the situation before 1934) or any unfairness to the decedent by treating as income in the year of death items that otherwise would have been spread over more than one year. Accordingly there is no occasion here to shift the liability for income received after death from the decedent to the actual recipient of the income, in order to give the decedent the protection against unfair and excessive taxation in the year of death that section 691 was intended to provide.

In the present case, as we discuss below, the trust was a separate taxable entity from the decedent. It was itself liable for the taxes upon the gain it realized upon the payment of the notes after 1968. The plaintiffs' claim that these gains were income in respect of a decedent is not made to avoid unfairness in the income tax liability of the decedent but to permit the trust to take deductions available to reduce its income. In short, permitting the trust to treat the gains on the notes as income in respect of a decedent would not further the policies that the provisions governing such income were designed to implement, but would be inconsistent with those policies.

■ C. The plaintiffs argue, however, that because the corpus of the trust was included in Jeanette Andersen's estate for estate tax purposes, she was therefore the constructive owner of the corpus when the trust sold the stock in 1965 and at her death; that if the sale had not been reported on the installment basis, all of the gain the trust realized on the sale would have been income in respect of a decedent in 1965; and that section 691(a)(4) of the Code requires that the gain be treated as such income even though the realization of most of it was deferred until after her death as a result of the stock being paid for on the installment basis. Section 691(a)(4) provides that an "installment obligation received by a decedent on the sale or other disposition of property, the income from which was properly reportable by the decedent on the installment basis under section 453," will be income in respect of a dece-

dent "if such obligation is acquired by . . . any person by reason of the death of decedent . . . ." The plaintiffs' view of the transaction is that Jeanette Andersen, as the constructive owner of the stock, received the installment notes on the sale; that the income from those notes was properly reported by her on the installment basis under section 453; and that the trust acquired the installment obligations "by reason of" her death.

The fact that the corpus of the trust was included in Jeanette Andersen's estate for estate tax purposes did not make her the constructive owner of the corpus or justify treating her and the trust as the same entity for tax purposes. The Internal Revenue Code treats the trust as a taxable entity separate and distinct from the settlor or the beneficiary. See I.R.C. § 641; *Manufacturers Hanover Trust Co. v. United States,* 312 F.2d 785, 792, 160 Ct.Cl. 582, 595, *cert. denied,* 375 U.S. 880, 84 S.Ct. 150, 11 L.Ed.2d 111 (1963). The income involved in this case—the gain the trust itself realized when the notes were paid—is different from the income the trust paid to the beneficiary. *See Manufacturers Hanover Trust Co., supra,* 312 F.2d at 794–795, 160 Ct.Cl. at 598–599. Although the trust was required to pay to Jeanette Andersen the gain on the notes that were paid during her lifetime (because under Florida law that gain was income rather than principal), that obligation did not convert the gain from income of the trust to income of Jeanette Andersen. The trust and Jeanette Andersen each received income upon the payment of the notes, the trust from the payor and Jeanette Andersen from the trust. (The trust was able to deduct the amounts it paid Jeanette Andersen in determining its net taxable income. *See* I.R.C. § 651.)

The corpus of the trust was included in Jeanette Andersen's estate pursuant to section 2036(a) of the Code, which requires inclusion in the gross estate of property that the decedent had transferred but in which he retained "the right to the income from the property." "The general purpose" of the provision "was to include in a dece-

dent's gross estate transfers that are essentially testamentary—i. e., transfers which leave the transferor a significant interest in or control over the property transferred during his lifetime." *United States v. Estate of Grace,* 395 U.S. 316, 320, 89 S.Ct. 1730, 1733, 23 L.Ed.2d 332 (1969). *See First National Bank of Shreveport v. United States,* 342 F.2d 415, 416–417 (5th Cir. 1965) ("the purpose of Section 2036 is to impose an estate tax upon property which the taxpayer gave away during his life but in which he retained economic benefit until his death"). The statute was designed to prevent the avoidance of estate taxes on dispositions of property that are basically testamentary. *See Helvering v. Bullard,* 303 U.S. 297, 302, 58 S.Ct. 565, 82 L.Ed. 852 (1938).

The fact that Jeanette Andersen retained a sufficiently significant economic benefit in the property she transferred to the trust in 1941 to require inclusion of it in her estate because the transfer was "essentially testamentary" did not make her the constructive owner of the property during her lifetime or justify ignoring the existence of

the trust as a taxable entity separate from the settlor. *See Helvering v. Bullard, supra,* 303 U.S. at 301, 58 S.Ct. 565; *United States v. O'Malley,* 383 U.S. 627, 630–631, 86 S.Ct. 1123, 16 L.Ed.2d 145 (1966).[9] *Cf. W & W Fertilizer Corp. v. United States,* 527 F.2d 621, 208 Ct.Cl. 443 (1975), *cert. denied,* 425 U.S. 974, 96 S.Ct. 2173, 48 L.Ed.2d 798 (1976), where an *inter vivos* trust held stock in a subchapter S corporation, the settlor retained almost complete control over the trust and the income of the trust was paid to him; the court refused to disregard the separate identity of the trust and treat the stock the trust held as stock of the settlor; the result was that the existence of the subchapter S corporation terminated because it had a stockholder (the trust) who was not an individual.

■ Plaintiffs also rely on section 677(a)(1), which provides that "The grantor shall be treated as the owner of any portion of a trust . . . whose income . . . may be distributed to the grantor." That section, however, must be read in conjunc-

**9.** Plaintiffs' reliance on two revenue rulings, Rev.Rul. 68–506, 1968–2 C.B. 332, and Rev.Rul. 76–100, 1976–1 C.B. 123, is misplaced. Those rulings stated that items of community property income held by a trust were income in respect of a decedent and that the property that generated the income therefore was not entitled to the stepped-up basis of its value at the decedent's death. They followed the rationale of *Stanley v. Commissioner of Internal Revenue,* 338 F.2d 434 (9th Cir. 1964), which applied what the court described as the "fiction" that all the nine categories of property listed in section 1014(b) are considered to have been acquired from or to have passed from the decedent. *See* text, *infra,* Part III. One of those categories, described in section 1014(b)(6), is, for decedents dying after 1947, "property which represents the surviving spouse's one-half share of community property held by the decedent and the surviving spouse" under community property laws, if at least one-half of the whole community interest in such property was includable in the decedent's gross estate.

The court in *Stanley* recognized that the literal language of that provision did not cover the surviving spouse's interest in community property, which she owned and did not obtain from her deceased husband. Under that literal language the surviving spouse's interest would not be "income in r·spect of a decedent" and her share of the community property would ac-

quire a new basis reflecting its higher value at the time of her husband's death. The court nevertheless refused to permit that result, because to do so would defeat the statutory purpose of section 1014(a) of equalizing the position of surviving spouses in community and non-community property states. The court therefore treated the interest of the surviving spouse in community property as "income in respect of a decedent under section 691, though solely for purposes of subsection (a) of section 1014 . . . ." (338 F.2d at 438). *See also Bath v. United States,* 211 F.Supp. 368, 370 (S.D.Tex.1962), *aff'd per curiam,* 323 F.2d 980 (5th Cir. 1963), where the court similarly denied a step-up in basis to the half interest in an installment note held by a surviving spouse in a community property state.

These decisions and rulings turn upon the special situation of community property interests, which the Code recognizes, and the need to prevent surviving spouses in community property states from receiving more favorable treatment than those in non-community property states. They cannot properly be applied to this case, which does not involve community property and where the question is whether the gain on property of the trust that it realized after the decedent's death was income in respect of a decedent.

tion with section 671, which limits and qualifies it. Section 671 provides that when it is specified under subpart (E) (which includes section 677) of subchapter J of the Code (which deals with the taxation of trusts) that a grantor (or other person) should be treated as the owner of trust property, the items of income, deduction and credits against a tax of the trust shall be included in computing the taxable income of the grantor or other person.

Section 671 is the operative provision of subpart (E); it specifies the result when a grantor is treated under subpart (E) as the owner of trust property. Section 677 is one of six subsections of subpart (E) that describe particular situations in which the grantor (or other person) is deemed to be the owner of trust property.

Such attribution of ownership, however, is for the purpose of shifting the tax incidence of the trust income from the trust to the grantor or other person. Under this provision Jeanette Andersen would have been liable during her life for the income the trust realized upon payment of the notes, because section 677 would have attributed the notes to her. But that section did not make her "the owner of" the trust property for purposes of determining whether the income the trust received from such property after her death was income in respect of a decedent under section 691. Section 677 made her the owner of the property only for the purpose of shifting the trust income to her during her lifetime, as section 671 provides.

### III.

■ Alternatively, plaintiffs contend that if the gain on the notes was not income

in respect of a decedent, then under section 1014(a) of the Code the trust was entitled to a step-up in the basis upon which the gain on the notes was determined.[10] Under plaintiffs' theory the cost basis of the notes would be their value at the time of Jeanette Andersen's death in 1968 (or any alternative valuation date used in determining the estate tax) instead of the carryover basis to the trust of the basis of the Orlando Newspapers' stock in Jeanette Andersen's hands at the time Jeanette Andersen transferred the stock to the trust in 1941 (and a possible adjustment under I.R.C. § 1015(d) for gift tax paid), on which the trust originally had reported the gain. Use of this stepped-up basis would substantially reduce the gain the trust realized when the notes were paid.

Section 1014(a) provides:

[T]he basis of property in the hands of a person acquiring the property from a decedent or to whom the property passed from a decedent shall, *if not sold, exchanged, or otherwise disposed of before the decedent's death by such person,* be the fair market value of the property at the date of the decedent's death, or in the case of an election under either section 2032 or section 811(j) of the Internal Revenue Code of 1939 where the decedent died after October 21, 1942, its value at the applicable valuation date prescribed by those sections. [Emphasis added.]

Section 1014(b)(9) states in substance that if property acquired from a decedent who died after 1953 is "required to be included in determining the value of the decedent's gross estate," the property shall be considered to have been acquired from or to have been passed from the decedent for purposes of subsection (a).[11] Section

---

**10.** Defendant contends that plaintiffs are precluded from making this argument because their claim for refund filed with the Internal Revenue Service asserted solely that the gain on the notes was income in respect of a decedent under section 691 but did not assert that the trust was entitled to a stepped-up basis under section 1014. Plaintiffs counter that the two sections are so interrelated that the claim under section 691 gave the Service notice that the section 1014 issue necessarily also was implicated. We find it unnecessary to decide this

issue, since we conclude on the merits that the trust is not entitled to a stepped-up basis.

**11.** "(b) Property Acquired From The Decedent.—For purposes of subsection (a), the following property shall be considered to have been acquired from or to have passed from the decedent:

   .    .    .    .

"(9) In the case of decedents dying after December 31, 1953, property acquired from the decedent by reason of death, form of

1014(c) makes the section inapplicable to "property which constitutes a right to receive an item of income in respect of a decedent under section 691."

The effect of these provisions is to increase the basis of property held by third persons that was included in evaluating the decedent's estate to the fair market value of that property as of the date of death (or any alternative valuation date used in determining the decedent's gross estate), instead of the lower basis at which it was originally acquired from the decedent.

Section 1014(a) is unavailable to the trust because it specifically excepts property acquired from a decedent that was "sold, exchanged or otherwise disposed of before the decedent's death by such [acquiring] person." The property the trust acquired from Jeanette Andersen was the stock of Orlando Newspapers she transferred to it in 1941. The trust sold that stock in 1965, three years before her death, for substantial cash and 15 promissory notes. The amount of the gain the trust realized upon the sale was fixed at that time: it was the difference between the basis of the stock when the trust acquired it in 1941 and the amount it obtained for the stock in 1965.

The legislative history of section 1014 confirms that Congress intended the statute to mean what it says: that the stepped-up basis was not available for property re-

ceived from a decedent that had been sold or otherwise disposed of prior to the decedent's death. The Senate Committee Report on the provisions stated that the rules providing for a stepped-up basis "shall only apply to property which has not been sold, exchanged, or otherwise disposed of before the decedent's death by the person to whom the property passed from the decedent." S.Rep. No. 1622, 83d Cong., 2d Sess. 423, *reprinted in* [1954] U.S.Code Cong. & Admin.News pp. 4621, 5066. *See also* H.R. Rep. No. 1337, 83d Cong., 2d Sess. A266, *reprinted in* [1954] U.S.Code Cong. & Admin.News pp. 4017, 4408. Similarly, the committee pointed out (*ibid.*) that

> [I]n the case of a transfer in contemplation of death the basis of the property in the hands of the donee who has retained the property until the decedent's death shall be determined under this section. If, however, the donee has disposed of the property prior to such date its basis both in the hands of the donee and the person acquiring it from the donee shall be determined without regard to this section.

The pertinent Treasury Regulation upon which plaintiffs rely is consistent with this conclusion and, indeed, reflects an administrative interpretation supporting that view. Treasury Regulation section 1.1014–3(d), quoted in footnote,[12] deals with "Reinvest-

---

ownership, or other conditions (including property acquired through the exercise or non-exercise of a power of appointment), if by reason thereof the property is required to be included in determining the value of the decedent's gross estate under chapter 11 of subtitle B or under the Internal Revenue Code of 1939. In such case, if the property is acquired before the death of the decedent, the basis shall be the amount determined under subsection (a) reduced by the amount allowed to the taxpayer as deductions in computing taxable income under this subtitle or prior income tax laws for exhaustion, wear and tear, obsolescence, amortization, and depletion on such property before the death of the decedent. Such basis shall be applicable to the property commencing on the death of the decedent."

12. "*Reinvestments of property transferred during life.*—Where property is transferred by a decedent during life and the property is sold,

exchanged, or otherwise disposed of before the decedent's death by the person who acquired the property from the decedent, the general rule stated in paragraph (a) of § 1.1014–1 shall not apply to such property. However, in such a case, the basis of any property acquired by such donee in exchange for the original property, or of any property acquired by the donee through reinvesting the proceeds of the sale of the original property, shall be the fair market value of the property thus acquired at the date of the decedent's death (or applicable alternate valuation date) if the property thus acquired is properly included in the decedent's gross estate for Federal estate tax purposes. These rules also apply to property acquired by the donee in any further exchanges or in further reinvestments. For example, on January 1, 1956, the decedent made a gift of real property to a trust for the benefit of his children, reserving to himself the power to revoke the trust at will. Prior to the decedent's death the trustee sold

ments of property transferred during life." It provides that where property received from a decedent during his life is sold, exchanged, or otherwise disposed of before the decedent's death, the stepped-up basis is available for any property the donee acquired through an exchange of or the reinvestment of the proceeds of the sale of the original property. There is no suggestion, however, that if the property was sold and the proceeds not reinvested, the stepped-up basis would be available. To the contrary, the stepped-up basis is provided only for property acquired with the proceeds of the sale of the original property.

■ Permitting the trust to use a stepped-up basis in determining its gain upon payment of each note also would be inconsistent with the basic theory of section 453 of the Code, under which the trust was permitted to report the gain from the sale of the stock on an installment basis. Section 453 is a remedial provision designed to enable a taxpayer who receives the proceeds of a sale of property over a period of years to spread the taxes on his gain on the transaction throughout the period during which he receives payment. It permits a taxpayer to report as income in a particular year the proportion of the total gain realized on the transaction that the amount of the particular payment bears to the total sales price. The provision enables the taxpayer to avoid the harshness of having to pay a tax on the entire gain at a time when a substantial portion of the money representing that gain has not been received. *Gimbel Bros., Inc. v. United States,* 535 F.2d 14, 16, 210 Ct.Cl. 17, 21 (1976); *Baltimore Baseball Club, Inc. v. United States,* 481 F.2d 1283, 1285, 202 Ct.Cl. 481, 485 (1973).

The income that section 453 permits to be reported on the installment basis is the gain on the particular transaction that generated the income. The statute does not treat each installment as a separate transaction, the gain on which is to be calculated separately. The amount of the total gain is set in the year of the sale of the property upon which the gain is realized. *See Murray v. United States,* 426 F.2d 376, 381, 192 Ct.Cl. 63, 72 (1970), *cert. denied,* 414 U.S. 854, 94 S.Ct. 154, 38 L.Ed.2d 104 (1973). Section 453 merely permits the taxpayer to defer reporting portions of that gain until the monies reflecting it actually are received upon payment of the installment obligations.

The only situation in which the statute permits recalculation of the gain in years after the transaction is if the installment obligations are satisfied at other than their face value or disposed of other than by sale or exchange. I.R.C. § 453(d). Except for these narrow exceptions, neither of which is applicable here, section 453 does not permit the annual recalculation of gain as each installment obligation is paid. The stepped-up basis under section 1014(a) is not available for redetermining the gain on the 1965 sale of the Orlando Newspapers stock that the trust elected to report on the installment basis under section 453.

### CONCLUSION

The defendant's motion for summary judgment is granted, the plaintiffs' motion therefor is denied, and the petition is dismissed.

KASHIWA, Judge, concurring in part and dissenting in part:

I concur in part III of the majority opinion, but disagree with part II of the opinion wherein the majority holds I.R.C. § 691 inapplicable to the installment payments received by plaintiff after the death of Jean-

---

the real property and invested the proceeds in stock of the Y Company at $50 per share. At the time of the decedent's death the value of such stock was $75 per share. The corpus of the trust was required to be included in the decedent's gross estate owing to his reservation of the power of revocation. The basis of the Y Company stock following the decedent's death

is $75 per share. Moreover, if the trustee sold the Y Company stock before the decedent's death for $65 a share and reinvested the proceeds in Z Company stock which increased in value to $85 per share at the time of the decedent's death, the basis of Z Company stock following the decedent's death would be $85 per share."

ette Andersen. Although I find the statutes involved in this case conceptually difficult,[1] I am of the opinion that an integrated reading of the various provisions involved in this case require that plaintiff prevail under its section 691 argument.

The parties concede that the peculiar facts of this case present the court with a question of statutory interpretation which no other court has faced. As such there is little to guide the court as it attempts to navigate the murky waters surrounding the interrelationships among the grantor trust, income in respect of decedent, estate taxation, and death basis rules.[2] We are left largely with the bare words of the provisions (I.R.C. §§ 677, 691, 2036, and 1014), the legislative and judicial history behind the sections, and the general rules of statutory construction.

The revenue provision, which the court is specifically requested to construe in this case, is section 691 (the pertinent portions of which are set forth in footnotes 3 and 4 of the majority opinion). The majority opinion as well as this court's opinion in *Estate of Davison v. United States*, 292 F.2d 937, 155 Ct.Cl. 290, *cert. denied*, 368 U.S. 939, 82 S.Ct. 380, 7 L.Ed.2d 337 (1961), adequately elaborate the judicial and legislative history behind the predecessor provision to section 691 (section 42 of the Revenue Act of 1942);[3] therefore, I will stress only two points about the predecessor provision. First, it was enacted to eliminate loopholes in the income taxation scheme

created by judicial decision, *Nichols v. United States*, 64 Ct.Cl. 241 (1927), *cert. denied*, 277 U.S. 584, 48 S.Ct. 432, 72 L.Ed. 999 (1928), which resulted in favorable tax treatment to cash basis decedents. Second, once effective the predecessor provision did eliminate the loophole it was designed to plug by switching a cash basis taxpayer to the accrual method of tax accounting at death, but it was rather neanderthal in its tax effect upon taxpayers due to the pyramiding of income it caused in the final return of a decedent.

Section 691 was first enacted in 1942 (as section 126 of the 1939 Internal Revenue Code) and represents a congressional fine tuning of the predecessor provision. As the majority opinion indicates, section 691 was designed to eliminate the neanderthal tax effect caused by the income pyramiding under the predecessor provision, while at the same time continuing the basic policy of subjecting earned income of a cash basis taxpayer to the income tax despite the fact of death. *See* H.R.Rep. No. 2333, 77th Cong., 2d Sess. 48, 83–84, *reprinted in* 1942–2 Cum.Bull. 372, 411, 435–436; S.Rep. No. 1631, 77th Cong., 2d Sess. 100, *reprinted in* 1942–2 Cum.Bull. 504, 579–580; *Estate of Davison v. United States, supra; Commissioner of Internal Revenue v. Linde*, 213 F.2d 1 (9th Cir.), *cert. denied*, 348 U.S. 871, 75 S.Ct. 107, 99 L.Ed. 686 (1954). The concept employed by Congress to achieve this fine tuning was that of income in respect of

---

1. Indeed, the statutes involved in this case bring to mind words of Judge Learned Hand, expressing the plight of a generalized federal judge faced with a complicated problem of tax law:

   " * * * the words of such an act as the Income Tax * * * merely dance before my eyes in a meaningless procession: cross-reference to cross-reference, exception upon exception—couched in abstract terms that offer no handle to seize hold of—leave in my mind only a confused sense of some vitally important, but successfully concealed, purport, which it is my duty to extract, but which is within my power, if at all, only after the most inordinate expenditure of time. I know that these monsters are the result of fabulous industry and ingenuity, plugging up this hole and casting out that net, against all possible evasion; yet at times I

   cannot help recalling a saying of William James about certain passages of Hegel: that they were, no doubt, written with a passion of rationality; but that one cannot help wondering whether to the reader they have any significance save that the words are strung together with syntactical correctness." [Hand, *Thomas Walter Swan*, 57 Yale L.J. 167, 169 (1947).]

2. I note that new § 1023, placed in the Code by the Tax Reform Act of 1976, substantially changed the death tax basis rules. However, section 1023 does not affect this case.

3. Hereinafter I will use the term "predecessor provision" to refer to the provision in effect from 1934 to 1942 and "section 691" to refer to the provision in effect after 1942.

a decedent.[4] Under this concept the earned, but not properly includible, income of a cash basis decedent is subject to income taxation, not on the decedent's final return but on the return of the successor in interest who eventually receives the income. I.R.C. § 691(a)(1). In changing the incidence of the income tax from the decedent to the successor in interest (thus eliminating the pyramiding problem), Congress necessarily laid down certain other rules concerning the taxation of these items to the successor in interest. First, it provided that the amount of the income to the successor in interest would be the same as if the decedent had received the income and reported it (i. e., despite the fact that these amounts would be includible in the decedent's gross estate, there would be no stepped-up basis for items which were income in respect of a decedent). I.R.C. § 1014(c). The characterization of the items of income as either exempt, ordinary, or capital would also be the same as if the decedent had received and reported the income, rather than the successor in interest. I.R.C. § 691(a)(3). When it reenacted section 691 into the 1954 Code, Congress specifically expanded the coverage of the section to cover installment obligations owned by a decedent at death. I.R.C. § 691(a)(4). And in so doing, Congress specifically exempted the transmission of installment obligations at death from the immediate recognition requirement of I.R.C. § 453(d)(1). I.R.C. § 453(d)(3); see also H.R.Rep. No. 1337, 83d Cong., 2d Sess. A219 (1954). Also, in adopting the income in respect of a decedent approach in 1942, Congress recognized that to an extent dual taxation would occur under the new approach. See H.R.Rep. No. 2333, 77th Cong., 2d Sess. at 86–87, reprinted in 1942–2 Cum.Bull. at 438; S.Rep. No. 1631, 77th Cong., 2d Sess. at 103–104, reprinted in 1942–2 Cum.Bull. at 582. Since the earned income not properly includible on the decedent's last return was no longer taxed in the decedent's final income tax return, the income tax liability on these items of income no longer reduced the decedent's gross estate as had been the case under the predecessor provision. Instead, the income in respect of a decedent items became unique in being both (1) subject to the estate tax due to their inclusion in the gross estate without adjustment for the income tax liability they inherently carried with them, and (2) subject to the income tax in the hands of the successor in interest without a basis adjustment for the estate tax paid. To compensate for this dual taxation, Congress enacted I.R.C. § 691(c). Subsection (c) in effect gives the ultimate recipient (successor in interest) of the income in respect of a decedent a deduction against income for a pro rata portion of the estate tax liability incurred by the decedent's estate due to the inclusion of the income in respect of a decedent items in the gross estate. Ferguson, *Income and Deductions in Respect of Decedents and Related Problems,* 25 Tax L.R. 5, 146 (1969).

The facts surrounding the installment obligations remaining after Jeanette Andersen's death in 1968 are unique in the very same sense as set out above. And if section 691(c) were viewed as an independent deduction generating provision (i. e., absent the income in respect of a decedent requirement), plaintiff would fall within the very purpose of the provision and the reason for its enactment. I note further that section 691(c) was expressly intended to be available to estates and trusts and that specific provision was made for the allocation of the deduction between a trust, like plaintiff, and its beneficiary(ies). I.R.C. § 691(c) (1)(B).

Plaintiff, in its administrative refund claim, asserted that it was entitled to the deduction provided by section 691(c). The refund claim was disallowed on the grounds that the installment obligations remaining after the death of Jeanette Andersen do not come within the ambit of what Congress intended in the term income in respect of a decedent as that term is hazily defined in

---

4. I note, as did the majority opinion, that Congress has never attempted to define the term "income in respect of a decedent." Thus, the task of giving this term meaning has fallen upon the courts and this is the task we face in this case.

section 691(a). And that is the defendant's position before this court.

It is indisputable that, but for the 1941 inter vivos transfer by Jeanette Andersen of the reversionary interest in the trust corpus, the installment obligations payable after her death would fall directly within the meaning of section 691(a)(4); thus qualifying as income in respect of a decedent. Indeed, the defendant admits even more in footnote 2 of its supplemental reply brief. There defendant states that had Jeanette Andersen retained ownership of the Orlando Daily Newspapers stock for one day after the date on which it was sold, thus making her actual owner of the installment obligations received from the sale for a short time under state law, and then transferred the installments to a trust identical to plaintiff, defendant would also consider the installment obligations involved herein income in respect of a decedent under section 691(a)(4). And the Commissioner has published a ruling holding that the transfer of installment obligations to a grantor trust will not prevent the income represented by the installment obligations from being treated as income in respect of a decedent; thus, denying these obligations a stepped-up basis under I.R.C. § 1014(c). Rev.Rul. 76–100, 1976–1 Cum.Bull. 123. Defendant, in footnote 2 of its Supplemental Memorandum, distinguishes plaintiff's situation from the facts of Rev.Rul. 76–100 on the grounds:

> * * * that Jeanette Andersen did *not* own the notes in question and Section 691(a)(4) operates only in the case of "installment notes *received by a decedent on the sale* * * * (of property) * * * if such obligation is acquired * * * *from the decedent* ".) * * * [Emphasis in original.]

Since under state law the plaintiff (trust) did not receive the installment obligations involved herein from the decedent, but instead from the sale of stock received in an inter vivos transfer of the decedent, Government counsel argues the installment obligations involved herein are not income in respect of a decedent under section 691(a)(4). Therefore, counsel argues it follows that plaintiff is not entitled to the deduction granted by section 691(c) and the asserted refund of taxes paid. The majority apparently agreed with the defendant's formalistic and, in my mind, hair-splitting analysis. I do not.

I start with the established principle that the incidence of the federal taxation statutes depends upon the substance, not the form, of the transaction. This basic tenet is well founded in case law. *Commissioner v. Court Holding Co.*, 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981 (1945). It is also partially codified in two of the provisions involved in this case.

Section 2036 is a congressional reaction to holdings of the Supreme Court in which the court paid little heed to the substance-over-form rule. In *May v. Heiner*, 281 U.S. 238, 50 S.Ct. 286, 74 L.Ed. 826 (1930), and *Burnet v. Northern Trust Co.*, 283 U.S. 782, 51 S.Ct. 342, 75 L.Ed. 1412 (1931), the Supreme Court held that the retention of a life estate (primary or secondary) in property transferred to a trust did not require the inclusion of the trust corpus in decedent's gross estate under the then-existing estate tax provisions. These decisions were apparently founded on the property law notion that the decedent retained no interest which passed to another at death [5] for a life estate simply expired upon the decedent's death.[6] Stephens, Maxfield & Lind, Federal Estate and Gift Taxation, ¶ 4.08[9] (4th ed. 1978). The Supreme Court's ignoring that an inter vivos transfer of a reversionary interest in property coupled with the settlor's retention of a life estate or right to possess and

---

**5.** Since the federal estate tax is an excise imposed upon the transfer of property at death, it would not be applicable if nothing was transferred at death.

**6.** It is notable that this same argument is advanced in the case at bar (that Jeanette Andersen only had a right to income for life which automatically expired at her death under state law) by the Government in arguing that the installment obligations remaining after Jeanette Andersen's death are not income in respect of a decedent.

enjoy the property for life is substantively the equivalent of a testamentary transfer of property led Congress to immediately pass Public Resolution No. 131, 46 Stat. 1516 (1931). The resolution amended the Revenue Act of 1926 to legislatively overturn the result of the Supreme Court holdings and thus subject future substantively testamentary transfers to the federal estate tax despite the nuances of state property law.[7]

Unlike section 2036, the grantor trust provisions (I.R.C. §§ 671–678) are a congressional attempt to codify the holding in *Helvering v. Clifford*, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788 (1940) (that where a settlor transfers property to a trust but retains certain powers over the trust such as in effect give the settlor dominion and control over the trust corpus, the settlor will be deemed owner of the income from the trust for income taxation purposes) and to provide some exclusive, concrete rules for the income taxation of grantor trusts; thus overcoming the confusion and litigation that flowed from the *Helvering v. Clifford* decision. The provisions deal with the question of which taxpayer is taxable on the income of a grantor trust (the grantor, the trust, or in some cases a third party). Section 677 is quite similar to section 2036 in that it ignores the fact that a trust is a separate taxable entity under the Code when the settlor of the trust transfers property to the trust and retains the right to

receive the income from the trust. In effect section 677, like section 2036, ignores the inter vivos transfer of the reversionary interest in property to the trust under state law and, instead, requires the settlor of the trust who retained the right to income to be treated as owner of the trust corpus for income tax purposes.[8]

Both section 2036 and section 677 are applicable to the facts of this case. The United States Tax Court has held that section 2036 required the inclusion of the corpus of the trust in Jeanette Andersen's gross estate for estate taxation purposes, *Estate of Andersen v. Commissioner*, 32 T.C.M. (CCH) 1164 (1973), and we are bound by that decision.[9] Plaintiff contends and defendant implicitly concedes in its supplemental reply brief that section 677 was the applicable provision to govern the taxation of the income stream generated by the trust during the period of years prior to Jeanette Andersen's demise in 1968. And I believe it indisputable, as a matter of law, that section 677 was the applicable income tax provision.[10]

In endeavoring to overcome defendant's argument that the installment obligations involved herein are not income in respect of a decedent, plaintiff initially contended that since Jeanette Andersen was substantively considered to have made a testamentary transfer of the corpus of the trust under section 2036, thus requiring the inclusion of

---

**7.** This quirk of judicial and legislative history partially explains the dates which now appear in I.R.C. § 2036(b).

**8.** The extent of ownership under the grantor trust rules of section 677, as the Government points out in its supplemental reply brief, depends upon the extent of the retained right to income. *See* Treas.Reg. §§ 1.671–3(a)(1); 1.677(a)–1(g) Example 1. On the facts of this case, Jeanette Andersen had, under the Florida court decree, *Martin Andersen, as Trustee*, No. 67–1052 (August 8, 1967), the right to receive both ordinary and capital gain income of the trust. As such under section 677 Jeanette Andersen would be treated as constructive owner of the entire trust corpus for federal income tax purposes. Treas.Reg. § 1.671–3(a)(1).

**9.** Not that we need to be bound, for I agree with the Tax Court's holding.

**10.** In part II–C of the majority opinion, the majority outlines the method followed in reporting the income generated by the trust during the time period prior to Jeanette Andersen's death (i. e., as a simple trust under the regular subchapter J rules). It appears that that is how the income was reported. However, merely because that was the method used does not stamp it with the indicia of correctness or make it binding on the taxpayer or the Government. As indicated above, the correct method by which the income of the trust should have been reported prior to Jeanette Andersen's death was under the grantor trust rules. *See* Treas.Reg. § 1.671–4. On the facts of this case it does not appear that the difference in method of reporting caused any loss of revenue to the Government or overpayment by the taxpayers.

the corpus in her gross estate for federal estate taxation purposes, she should also be treated as remaining, in substance, the owner of the corpus of the trust until her death for purposes of the income in respect of a decedent provision. At oral argument and in a supplemental brief on the point filed at the request of the court, plaintiff contended that under section 677 Jeanette Andersen was statutorily deemed the substantive owner of the trust corpus for federal income taxation purposes as well during her life. This, in plaintiff's mind, strongly buttresses its original position.

I would not be willing to hold, merely because under federal estate taxation law Jeanette Andersen was substantively deemed to have made a testamentary transfer of property to the plaintiff (trust), the installment obligations remaining after her death should be considered income in respect of a decedent. However, when one adds to plaintiff's initial contention its section 677 argument, I find the conclusion inescapable that the installment obligations remaining at the time of Jeanette Andersen's death were income in respect of a decedent within the meaning of section 691(a)(4).

Under section 677 Jeanette Andersen was deemed the owner of the entire corpus of the trust until her death in 1968. There is no question that the gain on the sale of the Orlando Daily Newspapers stock was realized (earned) and the amount of the gain fixed in 1964 [11]—a point in time during which Jeanette Andersen was owner of the stock for income tax purposes. As owner of the stock, Jeanette Andersen would also have been deemed to have made the sale of the stock under section 677 and would have

been liable for the income tax due on the entire gain from the sale in the year of the sale, but for the structuring of the sale so that the recognition of the gain from the sale was deferred over a period of years under section 453. The characterization of the gain from the sale as either exempt income, ordinary income, or capital gain would also be fixed by viewing it as received by Jeanette Andersen. Further, if the installment obligations had been disposed of by the trust prior to Jeanette Andersen's death in any of the proscribed ways under I.R.C. § 453(d)(1), Jeanette Andersen would have had to immediately recognize the remaining gain represented by the installment obligations under the provisions of section 677. Because section 677 made Jeanette Andersen the deemed owner of the stock for purposes of all the above income taxation purposes, I find it inescapable that it made her owner of the stock and resultant installment obligations for the income taxation purposes of section 691(a)(4), too.

As stated earlier in this opinion, the facts of this case make it one of first impression; thus leaving the court with no prior case law to guide it. I find one commentator, who is learned on the workings of section 691, who seems to agree with my conclusion. In a rather detailed and exhaustive article on the section, he states in discussing its applicability to trust income that:

> If trust income had been taxable to the decedent under the grantor trust provisions of sections 671 to 678, the trust would have no independent taxable year, *and the income would have been regarded as the decedent's to the extent realized*

11. In part II–B of the majority opinion, the majority states that Jeanette Andersen did not "earn nor accrue the right to the income" from the installment obligations remaining at her death during her life. I am puzzled by that statement. It is not disputed that the realization of the income occurred in 1964 when the stock was sold. The gain from the sale was determined in 1964 also. In fact, everything was completed prior to 1968 which gave the plaintiff (trust) the right to receive the payments. In my mind the gain on the sale had most certainly been earned by the time of Jean-

ette Andersen's demise in 1968. The only event of significance which had not occurred prior to her death is the date of recognition under section 453. It is clear that the later date of recognition was specifically dealt with in section 691(a)(4). Inferable from section 691(a)(4) is the concept that Congress did not want installment obligations deleted from income in respect of a decedent treatment merely because of the delayed income recognition date. Yet, this is the very effect which the majority's holding has.

*before death.* Hence, the accounting problems in a trust taxable under subchapter J are generally avoided, and the section 691 rules applicable to income generated outright by the decedent will apply. *Thus, if the trust contains rights to income generated by the decedent's* services or *predeath sales,* or rights to income from investments attributable to predeath holding periods, *the receipts may constitute income in respect of the decedent independently of subchapter J.* [Ferguson, *Income and Deductions in Respect of Decedents and Related Problems,* 25 Tax L.R. 1, 132–133 (1969).] [Emphasis supplied; footnote omitted.]

My conclusion is also supported by Rev. Rul. 76–100, 1976–1 Cum.Bull. 123, I believe. In that ruling the Commissioner was faced with the task of construing how revenue provisions, which are almost synonymous with the ones in this case, interacted. There in a community property context he held that the transfer of a decedent's one-half interest in installment obligations to a grantor trust (revocable trust) did not require immediate recognition to the transferor for under the grantor trust rules there had been no change of ownership for income taxation purposes; that the transfer of the decedent's half interest in the installment obligations which occurred at death did not trigger immediate recognition of the gain under section 453(d)(1) because the death transfer fell within the exception stated in section 453(d)(3); and that the installment obligations would not receive a stepped-up basis under I.R.C. § 1014(a) because the installment obligations represented income in respect of a decedent within the meaning of section 691(a)(4); thus falling within the exception stated in section 1014(c). The majority opinion distinguishes this ruling on the grounds that the ruling dealt with community property—particularly community property passing under section 1014(b)(6). I agree that that was the question addressed in the third part of the

ruling. The second portion of the ruling (the part set out above) did not deal with community property passing under section 1014(b)(6) and it is that portion of the ruling which I find very pertinent to this case. The defendant attempts to distinguish the pertinent portion of Rev.Rul. 76–100 on the grounds that the installment obligations involved there had been actually owned, under state law, prior to the transfer to the grantor trust. As I stated earlier, I find no merit in this distinction. I do not find ownership of the obligations critical to the holding in the second portion of the ruling. The factor that I find controlling in the ruling is the presence of the grantor trust and the tax ramifications it had on the income that flowed from such a trust.

For the foregoing reason, I would hold that the installment obligations remaining after the death of Jeanette Andersen are income in respect of a decedent under section 691(a)(4); that plaintiff is therefore entitled to a deduction under section 691(c); and that the proper amount of the deduction and resultant refunds for the years in issue should be determined in further proceedings pursuant to Rule 131(c) of this court.

I have heretofore twice referred to Ferguson's *Income and Deductions in Respect of Decedents and Related Problems,* 25 Tax L.R. 1, in the dissenting portion of this opinion. The majority does not refer to this learned writing at all. Yet, I find this article highly pertinent in this case. The writer of the article is now Assistant Attorney General in charge of the Tax Division, United States Department of Justice.